# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| DANTE' A.R. COMBS, individually and on behalf of all others similarly situated; and | ) ) ) |
| ADAM S. WILLIAMS, individually and on behalf of all others similarly situated,<br>**Plaintiffs,** | ) ) ) ) |
| v. | ) ) |
| LOUNGE KC, LLC<br>d/b/a Mosaic Lounge; | ) ) ) |
| ENTERTAINMENT CONCEPTS INVESTORS, LLC; | ) ) ) |
| ENTERTAINMENT CONSULTING INTERNATIONAL, LLC; | ) ) ) |
| FIRST RESPONSE, INC.; and | ) ) |
| The CORDISH COMPANIES, INC.<br>**Defendants.** | ) ) |

Civil Action No. _____

CLASS ACTION COMPLAINT

<u>JURY TRIAL DEMANDED</u>

## <u>ORIGINAL CLASS ACTION COMPLAINT</u>

Plaintiffs, individually and on behalf of all other persons similarly situated, hereby allege the following upon personal knowledge as to themselves and upon information and belief as to all other matters based upon the investigation of their attorneys. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

This is a class action lawsuit brought on behalf of all African Americans who have suffered discrimination based on race at the Power and Light Entertainment District in Kansas City, Missouri as a result of Defendants' pattern and practice of harassment, fraud, targeting, ejecting, exclusion, humiliation, assault, battery, and more, using the strategies described herein and more,

for the purpose of controlling and/or reducing/limiting the number of African American patrons at Power and Light, the most blatant of which practices is the following: paying a Caucasian man (or men) to intentionally start verbal altercations and/or tension with black patrons, for the purpose of having the patrons ejected for alleged "displaying aggression;" if ejected also, the Caucasian reenters and repeats the scheme on the same or subsequent evenings.

## CLASS DEFINITION

This Action seeks the ultimate certification of the following class of Plaintiffs:

All African Americans who have suffered discrimination, harassment, intentional infliction of emotional distress, defamation, assault, battery, and/or false imprisonment at Power and Light Entertainment District in downtown Kansas City, Missouri, by Defendants or any of the other businesses associated with The Cordish Companies or with Power and Light Entertainment District in general, acting in combination or singly, all in further of a plan and practice to:

(a) discourage African Americans from going to Power and Light;

(b) harass African Americans present at Power and Light;

(c) eject African Americans present at Power and Light;

(d) control or limit the numbers of African Americans present at Power and Light or in any of the business establishments therein or in the surrounding area; and/or

(e) create an atmosphere of hostility or "unwelcomeness" for African Americans in and/or surrounding Power and Light and various clubs and restaurants and shops therein;

through use of schemes such as the following:

i. Use of a "rabbit," i.e. an individual recruited for the purpose of appearing to start tensions, verbal altercations, and or physical altercations with African American

2

patron(s), for the purpose of getting said patron(s)ejected from the Entertainment District;

ii.  Turning away African Americans from the entrances to the District at large and/or common areas allegedly because they violated the dress code or some other rule;

iii.  Questioning African American patrons at the entrances to clubs and/or the district in general for the purpose of eliciting "annoyance" or some other response to be identified as "aggression," all for the purpose of creating a rule violation which would serve as a basis for turning the individual away from the club or district or having him ejected from same;

iv.  Ignoring/failing to serve African Americans at tables, bars and other areas, all for the purpose of giving them an "unwelcome" message;

v.  Keeping a head count on numbers of African Americans present in any one club or area of the District, so that when the "target" or limit number is reached, additional African Americans will be turned away or caused to leave by virtue of a change in the music genre or some other strategy;

vi.  Telling African Americans who call to reserve tables in a club that the reservations are all sold out for a particular night, when in fact same is not true;

vii.  Telling African Americans who have arrived at a club for their already-booked reservation that there is nothing on the books in their names, or that the computer must have messed up, or tables are double-booked and everyone else has already arrived; and

3

viii.   Any other conduct designed to discourage, eject, target, exclude, or harass African Americans at or around Power and Light for the purpose of controlling, limiting, or reducing the number of African American patrons in and around the premises.

## JURISDICTION AND VENUE

1.      Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction of Plaintiffs' claims under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a, because Plaintiffs' claims constitute a civil action arising under the laws of the United States.

2.      This Court also has subject matter jurisdiction of Plaintiffs' claims under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a pursuant to 28 U.S.C. § 1343(a)(4),  because Plaintiffs seek to recover damages or secure equitable relief under Acts of Congress providing for the protection of their civil rights.

3.      This Court has subject matter jurisdiction over Plaintiffs' claims arising under the common law and/or the laws of the State of Missouri pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Plaintiffs' claims under 42 U.S.C. § 1981 and 42 U.S.C. § 2000a that they form part of the same case or controversy.

4.      Finally, this Court has subject matter jurisdiction over all claims asserted in this action under 28 U.S.C. §1332(d)(2), because this matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of Plaintiffs is a citizen of a State different from at least one Defendant.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Kansas City, Jackson County, Missouri, which lies within the Western District of Missouri, and because Defendants transact business within the Western District of Missouri.

4

## PARTIES

6.     Named Plaintiff Dante' A.R. Combs is an individual of African American descent who resides at 16217 Ballentine, Overland Park, Kansas 66062. Combs holds a college degree and is a pharmaceutical representative for a major pharmaceutical company, with years of experience as a pharmaceutical professional.

7.     Named Plaintiff Adam S. Williams is an individual of African American descent who currently resides at 3721 N.W. 182 Terr., Edmond, Oklahoma 73012. Williams holds a college degree and works as a trauma sales consultant, with years of experience in the medical sales field.

8.     Defendant Lounge KC, LLC ("Lounge KC" or "Mosaic") is a Missouri limited liability company doing business as Mosaic Lounge. Lounge KC/Mosaic's principal place of business is located in the Power and Light District in downtown Kansas City at the location of 1331 Walnut, Kansas City, Missouri 64105. The Missouri Secretary of State lists Lounge KC's registered agent for service of process as CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

9.     Defendant First Response, Inc. ("First Response") is a Kansas corporation registered to do business in Missouri. The Missouri Secretary of State's Office lists First Response's registered agent for service of process as Melinda McLaughlan, 2506 NE 103rd Terrace, Kansas City, Missouri 64155.

10.    Defendant The Cordish Companies, Inc. ("Cordish") is a Maryland corporation which is not registered to do business with the Missouri Secretary of State. However, Cordish and/or its subsidiaries own, operate and/or lease all of the property located in the Power and Light

5

(Entertainment) District in downtown Kansas City. Cordish may be served through its registered agent in Maryland: RC Ventures, Inc. 6th Floor, 601 East Pratt Street, Baltimore, Maryland 21202.

11.     Defendant Entertainment Concepts Investors, LLC, is a Maryland limited liability company registered to do business in Missouri.  The Missouri Secretary of State's Office lists Entertainment Concepts Investors' registered agent for service of process as CSC – Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

12.     Defendant Entertainment Consulting International, LLC is a Maryland limited liability company registered to do business in Missouri.  The Missouri Secretary of State's Office lists Entertainment Consulting International's registered agent for service of process as Richard T. Bryant, 1102 Grand Boulevard #804, Kansas City, Missouri 64106.

## FACTUAL BACKGROUND

### A.     The Kansas City Power and Light District

13.     The Kansas City Power and Light District ("the District") is an approximately eight-block neighborhood located in downtown Kansas City, Missouri.

14.     Located within the District are a number of restaurants, bars, clubs, and other entertainment venues, including Angels Rock Bar ("Rock Bar"), Mosaic Lounge, and Hotel Nightclub, amongst many others.

15.     The District is owned, operated, and/or leased by one or more Defendants.

16.     Each of the individual establishments located within the District is owned, operated, and/or leased by one or more Defendants.

17.     At the center of the District is a large enclosed space, referred to by Defendants and others as the "Living Room" or "Plaza" area.  The Living Room consists of a spacious patio

6

surrounded by bars, restaurants, and nightclubs. The Living Room itself contains firepits, seating, a large elevated stage, a Jumbotron (a giant television/video screen), and more.

18. Many of the individual establishments within the District, including Mosaic, can ordinarily only be accessed by first entering the Living Room, and then going up a flight of stairs or taking an elevator to a second story. Some clubs do allow VIPs to enter without first passing through the Living Room.

19. To gain access to the Living Room, and/or any of the individual establishments located within the District, patrons must conform to a dress code.

20. Upon information and belief, said dress code is not publically posted anywhere within the District.

21. In addition to the dress code, patrons must conform to various rules of conduct or be subject to ejection from the District.

22. Upon information and belief, said rules are not publically posted anywhere within the District.

**B.  General Patterns and Practices of Discrimination by Defendants**

23. Upon information and belief, African Americans were and are more frequently denied entry to the District and/or the individual establishments located therein than are non-African Americans.

24. Upon information and belief, African Americans were and are frequently forced to wait longer in lines to enter the District and/or the individual establishments located therein than are non-African Americans.

25. Upon information and belief, African Americans were and are frequently provoked or harassed by Defendants and/or their agents. For instance, African Americans were and are

7

frequently told that their dress does not conform to the dress code, even though said code is not publically posted, and no violation has or had in fact occurred.

26.     Upon information and belief, Defendants and/or their agents excessively question African-American persons and groups at the entrances to the Living Room and/or the clubs located therein while letting similarly-dressed Caucasians pass by and enter.

27.     When such excessive questioning eventually elicits a frustrated reaction from the targeted African American person or group, Defendants and/or their agents have refused, and continue to refuse, to admit  said person or group, claiming the patron(s) had "displayed aggression" in violation of club or District rules.

28.     Upon information and belief, Defendants have employed a "rabbit," i.e., a Caucasian male willing to start altercations with groups of African American patrons, causing them to be ejected from the District.

29.     Upon information and belief, this "rabbit" is/was instructed by Defendants to hang around any African American male(s) he saw, regardless of how well-mannered, well-dressed, or well-educated these men appeared, and then provoke them into some kind of confrontation.

30.     This "rabbit" is known to Defendants and/or their agents, such that whenever the rabbit starts an altercation, security immediately intervenes to prevent the rabbit from "getting his ass kicked."

31.     Security then ejects the African American male(s) from the District. While the rabbit is also ejected, he is permitted to re-enter through another entrance and resume his work.

32.     Upon information and belief, Defendants have used a "rabbit" numerous times in the past several years – as part of an overall scheme to "lighten up" the District by ejecting African American patrons.

8

**C.  Specific Incidences of Discrimination Against Named Plaintiffs**

**1.  First Incident of Discrimination Against Named Plaintiff Combs**

33.    Plaintiff Dante' A.R. Combs is an individual of African American descent.

34.    Plaintiff holds a college degree and is a pharmaceutical representative for a major pharmaceutical company, with years of experience as a pharmaceutical professional.

35.    In or around the spring or summer of 2010 or 2011, Plaintiff was outside a club in the District, texting with friends who were supposed to meet him there.

36.    Plaintiff was leaning against a wall and was not in the way of or obstructing any foot traffic.

37.    Suddenly, a Caucasian male walked up and brusquely knocked Plaintiff's cell phone out of his hands and to the ground.

38.    The man then aggressively got in Plaintiff's face and said words to the effect of, "What are you looking at."

39.    Within a very short period, several security guards swooped in and began herding Plaintiff towards an exit.

40.    The guards repeatedly told Plaintiff that they "understood" what had happened to him, but that he needed to leave.

41.    The Caucasian man who had bumped into Plaintiff and acted aggressively was not asked to leave.

42.    Plaintiff was led to the exit near the Gordon Biersch restaurant and ejected.

**2.  Second Incident of Discrimination Against Named Plaintiff Combs**

9

43.     In or around the summer of 2011, Plaintiff hosted a business function at the Bristol Grill in downtown Kansas City for several medical professionals, including doctors and nurses, as his business clients.

44.     Following the program, the group decided to move to Mosaic Lounge, located within the District. Plaintiff sent the group ahead of him to Mosaic, so he could put his equipment into his car.

45.     Plaintiff was professionally dressed in a custom-made, upscale suit and tie.

46.     Upon arriving at Mosaic, Plaintiff got in line behind 4 to 5 people at the door of Mosaic. One by one, these people passed through security and entered the club.

47.     These persons, all of whom were Caucasian, were not asked for ID or otherwise questioned by security but passed right through the door.

48.     When Plaintiff got to the door, however, he was stopped and asked to produce ID.

49.     After producing his ID, Plaintiff was pulled out of line and told stand in a different location to which the guard(s) were pointing.  Plaintiff patiently followed the instructions given, moving to the spot indicated.

50.     Plaintiff was ignored for the next several minutes while security admitted several small clusters of people who arrived after him.  When the line had completely cleared and no one was waiting, security turned their backs on Plaintiff and chatted amongst themselves as if he was not there.

51.     Noticing that he was being ignored, Plaintiff eventually asked to be admitted to the club.  Plaintiff received no response from the guard(s) other than "Stay over there," or similar instructions.

10

52.     Eventually, Plaintiff asked to speak to a manager who could explain why Plaintiff was not being admitted to the club. The guards refused to summon a manager.

53.     At this point, the guards gathered around Plaintiff and informed Plaintiff that his suit pants were "too baggy," or similar words to that effect.

54.     Plaintiff replied that he would leave, but that he wanted the name(s) of the guard(s).

55.     Then, security guards working for Defendant First Response were summoned and herded Plaintiff towards a back hallway and down an elevator.

56.     The guards then steered Plaintiff out and ejected him by Gordon Biersch.

57.     Plaintiff, not wanting to cause trouble, informed his colleagues that he had been refused admittance to Mosaic and then left the area.

### 3. Third Incident of Discrimination Against Named Plaintiffs Combs and Adams

58.     In or around the late spring or early summer of 2010 or 2011, Plaintiffs Combs and Adams – who are both African American – were enjoying an evening at Maker's Mark, a restaurant/bar located within the Power & Light District.

59.     Plaintiffs were with several friends, many of whom were/are also African American.

60.     Like Plaintiffs themselves, their friends present that evening were all college-educated, and all had and have successful and highly-esteemed careers in the business, medical and legal communities in Kansas City.

61.     At one point in the evening, two female doctors known to Plaintiff Williams joined them and chatted for a time with Williams, Combs, and/or others.

Case 4:14-cv-00227-ODS   Document 1   Filed 03/10/14   Page 11 of 28

62.     After perhaps thirty minutes, a Caucasian man walked up to Williams, and then asked the two female doctors whether they were being bothered by Williams and Combs. The two women replied that they were not.

63.     The man subsequently turned to Williams, and made offensive and aggressive remarks. Williams made a patient and good-natured response, not wanting trouble.

64.     The Caucasian man then started a scuffle, and was quickly joined by several other Caucasian men, all of whom encircled Williams and/or Combs.

65.     Multiple punches were thrown and an all-out fight ensued, during which both Williams and Combs were repeatedly struck by the aggressors.

66.     Indeed, two First Response guards grabbed Williams and held him while one of the aggressors continued choking him with both hands around his neck. The First Response guards then placed Williams in handcuffs.

67.     During this time, the First Response guards were adamantly told by the two female doctors that neither Williams nor Combs was an aggressor, and they pointed out the Caucasian man who had started the incident.

68.     First Response completely ignored the statements of these eyewitnesses.

69.     First Response then dragged Williams – in handcuffs – out of Maker's Mark, through the very crowded courtyard/common areas, and into the First Response security office on the other side of the District.

70.     Plaintiff Williams was detained by First Response for approximately 90 minutes, during which time he was repeatedly questioned. Williams was not questioned about the incident itself; instead, he was subjected to harassing questions about what he was doing at Power & Light and how often he came there.

71.     During this time, a bartender from the Maker's Mark arrived at the office and specifically told the First Response guards that she had witnessed the entire event, and that the entire incident was provoked by a Caucasian aggressor who seemed intent on causing trouble so Williams and/or Combs would be blamed.

72.     First Response completely ignored the Maker's Mark employee's statements.

73.     At no time did First Response question the aggressors, detain the aggressors, take statements from them, or even take their names.

74.     After about 90 minutes, Williams was let go. Combs, fearing for the physical safety of his friend, and his own, was waiting for Williams, and together they left the district.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

75.     Plaintiffs hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

76.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a Class consisting of all individuals meeting the definition set out above.

77.     Excluded from the Class are governmental entities, Defendants, their affiliates and subsidiaries, Defendants' current or former employees, officers, directors, agents, representatives, their family members, and members of this Court and its staff.

78.     Plaintiffs do not know the exact size or identities of the members of the proposed class, but believe that the Class encompasses many hundreds and perhaps thousands of individuals, based on the popularity of the Power & Light District. Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

13

79.     Based on the size of the potential class and the nature of the damages alleged, Plaintiffs believe the amount in controversy easily exceeds $5 million.

80.     All members of the Class have been subjected to and affected by the same conduct. Thus, there are questions of law and fact that are common to the Class, and predominate over any questions affecting only individual members of the Class.

81.     The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class in that Plaintiffs and the other members of the Class were subject to the same conduct, perpetrated by one or more of the Defendants, on account of Plaintiffs' race/color.

82.     The individuals named Plaintiffs will fairly and adequately represent the interests of the Class. Each is committed to the vigorous prosecution of the Class's claims and has retained attorneys who are qualified to pursue this litigation. Class Counsel has been investigating claims of racial discrimination by Defendants for several months, and said Counsel has established relationships with former employees of Defendants who will be key witnesses to what appears to be an intentional and widespread pattern or practice of racial discrimination by Defendants.

83.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

84.     This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3). Defendants have acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

**COUNT I – On Behalf of All Plaintiffs and Against All Defendants**

14

**RACIAL DISCRIMINATION OR SEGREGATION
IN A PLACE OF PUBLIC ACCOMMODATION
IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000A ET SEQ.**

85. Plaintiffs hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

86. Federal law prohibits discrimination or segregation in places of public accommodation as set forth in 42 U.S.C. § 2000a, which provides in part:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

87. The properties owned/operated by Defendant(s) in and around the Kansas City Power & Light District are places of public accommodation under 42 U.S.C. § 2000a(b), which provides in part:

> Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter if its operations affect commerce, or if discrimination or segregation by it is supported by State action:
> ...
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
>
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment;
>
> (4) any establishment
> (A)
> > (i) which is physically located within the premises of any establishment otherwise covered by this subsection, or
> > (ii) within the premises of which is physically located any such covered establishment, and
> (B) which holds itself out as serving patrons of such covered establishment.

88. The Kansas City Power & Light District is a "place of exhibition or entertainment" under 42 U.S.C. § 2000a(b)(3). The District's website described the District as "the mid-west's

15

premier entertainment epicenter. With more than 50 than 50 unique and captivating shops, restaurants, bars, and entertainment venues, the district offers something for everyone." The District regularly hosts live music/concerts, sports rallies, themed parties, mixed martial arts fights, and other forms of exhibition or entertainment.

89.     Alternatively, the Kansas City Power & Light District is a place of public accommodation under 42 U.S.C. § 2000a(b)(2), in that the District, as a whole, is a facility principally engaged in selling food for consumption on the premises.

90.     Because the Kansas City Power & Light District, as a whole, is a place of public accommodation under 42 U.S.C. § 2000a(b)(2) and/or (b)(3), each of the individual properties physically located within the District are places of public accommodation under 42 U.S.C. § 2000a(b)(4), because said properties are located within the District and hold themselves out as serving patrons of the District.

91.     Alternatively, each of the individual properties located within the District is a place of public accommodation under 42 U.S.C. § 2000a(b)(2) and/or (b)(3), either because the property is principally engaged in the selling of food for consumption on the premises *or* because it is a place of exhibition or entertainment.

92.     Both the Kansas City Power & Light District and each of the individual properties located therein are operations affecting commerce under 42 U.S.C. § 2000a(c), because the District and each of the individual properties located therein:

> i.     serves or offers to serve interstate travelers a substantial portion of the food which it serves; and/or
>
> ii.    customarily presents films, performances, athletic teams, exhibitions, or other sources of entertainment which move in commerce; and/or

16

        iii.    is physically located within the premises of an establishment the operations of which affect commerce.

93.    Because the Kansas City Power & Light District and the properties located in and around it are places of public accommodation, the operations of which affect commerce, Defendants were required by federal law to provide Plaintiffs with full and equal enjoyment of these places without discrimination or segregation on the grounds of race or color.

94.    Members of the Class of Plaintiffs, including named Plaintiffs Combs and Williams, were denied full and equal enjoyment of one or more places of public accommodation by Defendants, on account of their African American race and/or their dark skin color.

95.    As described in Paragraphs ___, supra, members of the Class of Plaintiffs were denied the full and equal enjoyment of one or more places of public accommodation by Defendants when said Class members were denied entry to or were ejected from the Kansas City Power & Light District and/or any individual establishments located therein.

96.    As described in Paragraphs 58 – 74, supra, named Plaintiffs Combs and Williams were denied full and equal enjoyment of a place of public accommodation by Defendants when Plaintiffs were ejected from Maker's Mark/the District in 2010.

97.    As described in Paragraphs 23 – 32, supra, named Plaintiff Combs was denied full and equal enjoyment of a place of public accommodation by Defendants when he was ejected from the District following an incident with a Caucasian male "rabbit."

98.    As described in Paragraphs 43 – 57, supra, named Plaintiff Combs was denied full and equal enjoyment of a place of public accommodation by Defendants when he was denied entry to Mosaic Lounge and subsequently ejected from the District, allegedly for violating a dress code and/or rules of conduct.

17

99.     Defendants' actions deprived members of the Class of their rights under federal law, in violation of 42 U.S.C. § 2000a et seq.

100.    Members of the Class, including named Plaintiffs Combs and Williams, have been damaged as a direct and proximate result of Defendants' actions. In particular, they have suffered injuries including, but not limited to: inconvenience, insult, humiliation, embarrassment, emotional distress, and other actual damages, which, in sum, exceed $5 million.

101.    Defendants' actions were willful, wanton, reckless, and malicious, and, further, show a complete and deliberate indifference to, and conscious disregard for the civil rights of the Class. Therefore, the Class is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others similarly situated from like conduct in the future.

102.    The Class is entitled to recover from Defendants its reasonable attorneys' fees and expenses.

WHEREFORE, named Plaintiffs Combs and Williams, on behalf of themselves individually and all others similarly situated, i.e., members of the Class, request that the Court:

(1)     after trial by jury, enter judgment in their favor and against Defendants because of Defendants' violation of 42 U.S.C. § 2000a et seq. and for such actual and punitive damages as the jury may award as fair and reasonable;

(2)     declare the patterns and practices of racial discrimination by Defendants in and around the Kansas City Power & Light District and the individual establishments physically located therein to be in violation of 42 U.S.C. § 2000a et seq.;

(3)     enjoin the Defendants, their employees, agents, and places of public accommodation within the Power & Light District from further acts of discrimination;

18

(4)     enter judgment in favor of the Class and against Defendants for the Class's attorney fees, expenses, and costs in this matter; and,

(5)     grant the Class such other and further relief as the Court may deem just and proper.

**COUNT II – On Behalf of All Plaintiffs and Against All Defendants**

**RACIAL DISCRIMINATION DENYING PLAINTIFFS
EQUAL RIGHTS UNDER THE LAW
IN VIOLATION OF THE CIVIL RIGHTS ACTS
OF 1866, 1870 AND 1991, 42 U.S.C. § 1981**

103.     Plaintiffs hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

104.     Federal law guarantees African-Americans, inter alia, equal rights under the law as set forth in 42 U.S.C. § 1981, which provides:

(a) Statement of equal rights - All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined - For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment - The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

105.     Defendants denied members of the Class of Plaintiffs, including named Plaintiffs Combs and Williams, the same rights to make and enforce contracts as white citizens.

106.     As described in Paragraphs ___, supra, Members of the Class of Plaintiffs were denied entry to/ejected from the Kansas City Power & Light District and/or individual establishment(s) located therein much more frequently than whites.

19

107.    As described in Paragraphs 58 – 74, supra, named Plaintiffs Combs and Williams were denied entry to and/or ejected from the Power & Light District and/or individual establishment(s) located therein, while similarly situated white individuals were not.

108.    As described in Paragraphs 23 – 32 and 33 – 42, supra, named Plaintiff Combs was denied entry to and/or ejected from the Power & Light District and/or individual establishment(s) located therein, while similarly situated white individuals were not.

109.    Defendants' conduct prevented Members of the Class from making a purchase or receiving a service after said Members attempted to do so.

110.    Defendants did not impose the same terms and conditions on similarly situated white citizens, who were freely permitted to make purchases and receive goods/services.

111.    Defendants imposed different terms and conditions on Plaintiffs' ability to enter/remain in the District and/or the individual establishments located therein, and, thus, on Plaintiffs' right to make and enforce contracts, on the basis of Plaintiffs' race and/or skin color.

112.    Defendants thus deprived members of the Class, including named Plaintiffs Combs and Williams, of the full and equal benefit of all laws and proceedings as are enjoyed by white citizens in the making and enforcing of contracts and in the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, in violation of 42 U.S.C. § 1981.

113.    Members of the Class, including named Plaintiffs Combs and Williams, have been damaged as a direct and proximate result of Defendants' actions. In particular, they have suffered injuries including, but not limited to: inconvenience, insult, humiliation, embarrassment, emotional distress, and other actual damages, which, in sum, exceed $5 million.

114.    Defendants' actions were willful, wanton, reckless, and malicious, and, further, show a complete and deliberate indifference to, and conscious disregard for the civil rights of the

Class. Therefore, the Class is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others similarly situated from like conduct in the future.

115.    The Class is entitled to recover from Defendants their reasonable attorneys' fees and expenses as provided by 42 U.S.C. § 1988.

WHEREFORE, named Plaintiffs Combs and Williams, on behalf of themselves individually and all others similarly situated, i.e., future members of the Class, request that the Court:

(1)    after trial by jury, enter judgment in their favor and against Defendants because of Defendants' violation of 42 U.S.C. § 1981 and for such actual and punitive damages as the jury may award as fair and reasonable;

(2)    declare the patterns and practices of racial discrimination by Defendants in and around the Kansas City Power & Light District and the individual establishments physically located therein to be in violation of 42 U.S.C. § 1981;

(3)    enjoin the Defendants, their employees, agents, and places of public accommodation within the Power & Light District from further acts of racial discrimination violating 42 U.S.C. § 1981;

(4)    enter judgment in favor of the Class and against Defendants for the Class's attorney fees, expenses, and costs in this matter; and,

(5)    grant the Class such other and further relief as the Court may deem just and proper.

### COUNT III – Named Plaintiffs Combs and Williams Against All Defendants
### ASSAULT

116.    Plaintiffs Combs and Williams hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

117.    As described in Paragraphs 58 – 74, supra, Plaintiffs were ejected from the Kansas City Power & Light District and/or individual establishment(s) located therein through the intentional conduct of Defendant(s) and/or their agents.

118.    During these incidents, Defendants' conduct placed Plaintiffs in reasonable fear of a harmful/offensive touching.

119.    This fear of a harmful/offensive touching resulted in suffering and damages to Plaintiffs.

120.    The aforesaid acts, omissions and/or representations of Defendant(s) and/or their agents/employees were intentional, done with malice, outrageous and showed a complete indifference and/or reckless disregard for the rights and/or safety of Plaintiffs, and therefore, Plaintiffs are entitled to punitive damages from Defendants to punish and to deter Defe**Error! Hyperlink reference not valid.**ndants and others from like conduct.

WHEREFORE, Plaintiffs Combs and Williams respectfully pray the Court issue Judgment in their favor and against and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus their attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

### COUNT IV – Named Plaintiff Williams Against All Defendants
### BATTERY

121.    Plaintiff Williams hereby adopts, realleges, and incorporates by reference every allegation above as if set forth herein in full.

122.    As described in Paragraphs 58 – 74, supra, Plaintiff was ejected from the Kansas City Power & Light District and/or individual establishment(s) located therein through the intentional conduct of Defendant(s) and/or their agents.

22

123. During this incident, Defendants intended to cause a harmful/offensive touching to Plaintiff.

124. Through the actions of Defendant(s), a harmful/offensive touching of Plaintiff did, in fact, occur.

125. This harmful/offensive touching resulted in physical injuries, pain, suffering, humiliation, and embarrassment to Plaintiff.

126. The aforesaid acts, omissions and/or representations of Defendant(s) and/or their agents/employees were intentional, done with malice, outrageous and showed a complete indifference and/or reckless disregard for the rights and/or safety of Plaintiffs, and therefore, Plaintiffs are entitled to punitive damages from Defendants to punish and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiff Williams respectfully prays the Court issue Judgment in his favor and against Defendants and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus his attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT V – Named Plaintiffs Combs and Williams Against All Defendants
## FALSE IMPRISONMENT

127. Plaintiffs Combs and Williams hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

128. As described in Paragraphs 58 – 74, supra, Defendant(s) and/or their agents/employees, acting in the course and scope of their employment and agency and in the prosecution of Defendants' business, did "arrest," handcuff, and otherwise restrain and/or instigate the restraint of Plaintiff Williams against his will without legal justification at the Kansas City Power & Light District.

23

129.     In restraining Plaintiff Williams, Defendants effectively restrained Plaintiff Combs, who was concerned for the safety of his friend.

130.     This "arrest" and restraint of Plaintiffs was illegal and improper and caused Plaintiffs damage, including shame, embarrassment, fear, humiliation, emotional distress, pain, and suffering.

131.     The aforesaid acts, omissions and/or representations of Defendant(s) and/or their agents/employees were intentional, done with malice, outrageous and showed a complete indifference and/or reckless disregard for the rights and/or safety of Plaintiffs, and therefore, Plaintiffs are entitled to punitive damages from Defendants to punish and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs respectfully pray the Court issue Judgment in their favor and against Defendants and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus their attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT VI – Unknown Class Plaintiffs Against All Defendants
## ASSAULT

132.     Plaintiffs hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

133.     As described in Paragraphs 23 – 32, supra, Members of the Class of Plaintiffs were ejected from the Kansas City Power & Light District and/or individual establishment(s) located therein through the intentional conduct of Defendant(s) and/or their agents.

134.     During these incidents, Defendants' conduct placed Members of the Class in reasonable fear of a harmful/offensive touching.

24

135. This fear of a harmful/offensive touching resulted in suffering and damages to Members of the Class.

136. The aforesaid acts, omissions and/or representations of Defendant(s) and/or their agents/employees were intentional, done with malice, outrageous and showed a complete indifference and/or reckless disregard for the rights and/or safety of Members of the Class, and therefore, Members of the Class are entitled to punitive damages from Defendants to punish and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs respectfully pray the Court issue Judgment in their favor and against and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus their attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## COUNT VII – Unknown Class Plaintiffs Against All Defendants
## BATTERY

137. Plaintiffs hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

138. As described in Paragraphs 23 – 32, supra, Members of the Class were ejected from the Kansas City Power & Light District and/or individual establishment(s) located therein through the intentional conduct of Defendant(s) and/or their agents.

139. During this incident, Defendants intended to cause a harmful/offensive touching to Members of the Class.

140. Through the actions of Defendant(s), a harmful/offensive touching of Members of the Class did, in fact, occur.

141. This harmful/offensive touching resulted in physical injuries, pain, suffering, humiliation, and embarrassment to Members of the Class.

Case 4:14-cv-00227-ODS   Document 1   Filed 03/10/14   Page 25 of 28

142.    The aforesaid acts, omissions and/or representations of Defendant(s) and/or their agents/employees were intentional, done with malice, outrageous and showed a complete indifference and/or reckless disregard for the rights and/or safety of Members of the Class, and therefore, Members of the Class are entitled to punitive damages from Defendants to punish and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs respectfully pray the Court issue Judgment in their favor and against Defendants and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus their attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

### COUNT VIII – Unknown Class Plaintiffs Against All Defendants
### FALSE IMPRISONMENT

143.    Plaintiffs hereby adopt, reallege, and incorporate by reference every allegation above as if set forth herein in full.

144.    As described in Paragraphs 23 – 32, supra, Defendant(s) and/or their agents/employees, acting in the course and scope of their employment and agency and in the prosecution of Defendants' business, did "arrest," handcuff, and otherwise restrain and/or instigate the restraint of Members of the Class against their will without legal justification at the Kansas City Power & Light District.

145.    These "arrests" and restraints of Members of the Class were illegal and improper and caused Members of the Class damage, including shame, embarrassment, fear, humiliation, emotional distress, pain, and suffering.

146.    The aforesaid acts, omissions and/or representations of Defendant(s) and/or their agents/employees were intentional, done with malice, outrageous and showed a complete indifference and/or reckless disregard for the rights and/or safety of Members of the Class, and

26

therefore, Members of the Class are entitled to punitive damages from Defendants to punish and to deter Defendants and others from like conduct.

WHEREFORE, Plaintiffs respectfully pray the Court issue Judgment in their favor and against Defendants and award actual and punitive damages in an amount exceeding Ten Million Dollars, plus their attorneys' fees, costs, expenses, and any and all further relief which the Court deems just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, each on his/her own behalf and on behalf of the other members of the Class, request Judgment and relief on all causes of action as follows:

(1) An order from this Court certifying this action as a class action under the Federal Rules of Civil Procedure, and appointing Plaintiffs Combs and Williams as representatives of the Plaintiffs' Class described herein;

(2) Judgment in favor of Plaintiffs and Class members against Defendants, jointly and severally, in an amount to be ascertained at trial;

(3) Judgment in favor of Plaintiffs and Class members and against Defendants, jointly and severally, awarding Plaintiff and Class members pre- and post-judgment interest;

(4) Judgment in favor of Plaintiffs and Class members and against Defendants, jointly and severally, awarding Plaintiffs' and Class members' attorneys' fees, Class Representative incentive fees, litigation expenses, including fees and costs of expert witnesses, and all other costs of this action;

(5) A permanent or final injunction enjoining Defendants and their agents, employees, affiliates, and subsidiaries from continuing to harm Plaintiffs and the members of the Class;

(6) A permanent or final injunction enjoining Defendants and their agents, employees, affiliates, and subsidiaries Defendants, from further acts of racial discrimination;

(7) That the undersigned counsel be appointed as Class Counsel;

(8) Judgment in favor of Plaintiffs and Class members and against Defendants, jointly and severally, awarding Plaintiffs and Class members such other and additional legal or equitable relief as may be just and warranted under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues that may be so tried.

Respectfully submitted,

Dickens Law LLC

Linda S. Dickens
Missouri Bar 31331
27 Corporate Woods
Suite 190
10975 Grandview Drive
Overland Park, KS 66210
Direct: 913-486-9908
Fax: 913-317-1416
**Counsel for Plaintiff**