IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DANTE A.R. COMBS, individually and ) <br>
on behalf of all others similarly situated, ) <br>
and ADAM S. WILLIAMS, individually ) <br>
and on behalf of all others similarly ) <br>
situated, ) <br>
) <br>
           Plaintiffs, ) <br>
) <br>
vs. )     Case No. 14-0227-CV-W-ODS <br>
) <br>
THE CORDISH COMPANIES, INC., ) <br>
et al., ) <br>
) <br>
          Defendants. )

ORDER AND OPINION (1) DENYING MOTION TO DISMISS FILED BY CORDISH
COMPANIES AND OTHER DEFENDANTS, (2) GRANTING IN PART AND DENYING
IN PART MOTION TO DISMISS FILED BY FIRST RESPONSE, AND (3) DISMISSING
COUNT I WITHOUT PREJUDICE FOR LACK OF JURISDICTION

Pending are separate motions to dismiss filed by (1) Lounge KC, Entertainment
Concepts Investors, Entertainment Consulting International and the Cordish Companies
(collectively "Cordish") and (2) First Response.   Cordish seeks dismissal of the class
allegations only.  First Response's motion also addresses the class allegations and
claims, and also seeks dismissal of the individual/named Plaintiffs' claims as well.
Cordish's motion (Doc. # 26) is denied; First Response's motion (Doc. # 35) is granted
in part and denied in part.

A.

The Amended Complaint raises allegations about activities in "the Power and
Light District" ("the District") – "an approximately eight-block neighborhood located in
downtown Kansas City" that consists of "a number of restaurants, bars, clubs, and other
entertainment venues . . . ."  Amended Complaint, ¶¶ 12-13.  Not all of the Defendants'
roles or connections to the District are pleaded (but this is not the basis for the motions

so the Court will not dwell on the issue at length).  Cordish, on its own or through subsidiaries, is alleged to "own, operate and/or lease" the property in the District.  Id., ¶ 9.  Lounge KC is alleged to own one of the bars or restaurants in the District.  Id., ¶ 7. First Response is described in the parties' filings as a security company hired to provide security and surveillance in the District.  E.g., Doc. # 27 at 6; Doc. # 36 at 6.

Within the District is a common area referred to as the "Living Room" or "Plaza," consisting of a patio area and the entrances (in some cases, the only entrances) to various bars, restaurants and nightclubs.  Amended Complaint, ¶¶ 16-17.  As a general matter, the Amended Complaint alleges measures have been taken to preclude African Americans from being in the Plaza, thereby denying them access to the businesses accessed therefrom.   The Amended Complaint begins with allegations about a dress code that supposedly existed until 2008.  It is alleged that complaints were made that the dress code was (1) itself discriminatory and (2) was applied in a discriminatory manner in order to exclude African Americans.  Id., ¶ 22.  The City Council passed an ordinance in April 2008 that limited what could be included in such a dress code.  Id., ¶ 23.  Subsequent "testing" of the ordinance's effectiveness revealed that it was ignored, resulting in lawsuits.  Id., ¶¶ 24-28.  Plaintiffs allege that following these events, "Defendants were forced to implement harder-to-detect methods of harassment, humiliation, and intimidation to carry out their discriminatory schemes."  Id., ¶ 29.

The Amended Complaint then sets forth the means Defendants are alleged to have adopted to limit African Americans' access to the District.  These alleged means include:

- Delayed our outright denial of entry, Id., ¶¶ 32-33,
- Harassing and provoking patrons through the use of "excessive questioning," following patrons, and making "unfounded accusations" about violations of the dress code or the District's rules of conduct, Id., ¶¶ 34-36, and
- The use of one or more employees (termed "rabbits") to initiate altercations with African Americans in order to provide an excuse to eject them. Id., ¶ 42-48.

It is specifically alleged that these tactics are employed "for the purpose of restricting the access of African Americans" to the District and the establishments therein. Id., ¶ 38. The wording of the other allegations also makes clear that Plaintiffs allege these tactics are used as a means for excluding and removing African Americans from the District.

The Amended Complaint then sets forth three specific instances in which these tactics were employed: two involve Combs, and one involves both Combs and Williams. Id., ¶¶ 49-90.

Plaintiffs assert two claims on behalf of themselves and a class. Both claims assert discrimination based on race (although they invoke different civil rights statutes). Count I is predicated on Title II of the Civil Rights Act, which prohibits discrimination in places of public accommodation. Count II asserts violations of 42 U.S.C. § 1981, which prohibits discrimination in the making and enforcing of contracts and contractual relationships. The Class Definition is very lengthy and will not be set forth here; generally, it consists of all African Americans who have been subjected to the conduct described above.

B.

Both motions contend the class allegations should be dismissed because the Amended Complaint has not supplied sufficient detail about the class members, such as their names and what happened to each of them. However, the Amended Complaint describes general policies and practices that are alleged to have been employed for the specific purpose of depriving African Americans of their right to frequent the District and its establishments. The Court concludes the Amended Complaint satisfies the requirements of Ashcroft v. Iqbal, 556 U.S. 62 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).[1]

_____

[1]Despite Plaintiffs' entreaties to so hold, the Court does not reach this decision because it is somehow bound by the decision in *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 4090347 (W.D. Mo. Sept. 17, 2012). The decisions of one District Judge do not bind another.

The Court's conclusion should not be construed as ruling that the class will (or will not) be certified.[2]  This is a matter that can only be decided after Plaintiffs file a Motion for Class Certification and the matter is fully briefed.  All the Court presently holds is that Plaintiffs have sufficiently alleged their causes of action and have sufficiently alleged the nature and contours of the class they wish to represent.  The law does not demand the degree of detail Defendants seem to seek.

## C.

First Response goes further, arguing that Combs's and Williams's claims should be dismissed because they have not pleaded sufficient facts to demonstrate they were the victims of intentional discrimination.  The Court disagrees.  First Response also contends the facts pleaded could plausibly demonstrate Combs and Williams were treated differently based on their conduct and not their race (because there are allegations about involvement in a confrontation) – but to arrive at this conclusion requires ignoring a healthy portion of the Amended Complaint and construing its allegations in First Response's favor.

## D.

Finally, both motions decry the discussion about the dress code from and following 2008.  Defendants discuss these events and allegations at some length to contend they have no relationship to Plaintiffs.  This is true – but then, Plaintiffs have not alleged these events and allegations relate directly to Plaintiffs.  The allegations advance Plaintiffs' theory as to *why* Defendants employed the measures that are the subject of this suit.  These allegations may not be necessary and evidence about them

---

[2]At this early juncture, the Court already can identify at least one difficulty: the Class Definition, which spans over two pages long, is unwieldy and unworkable. However, Plaintiffs (and, for that matter, the Court) are not bound to consider only that definition.

may or may not be admissible at trial,[3] but their presence in the Amended Complaint does not justify dismissal of anything.

Defendants also contend Plaintiffs included these allegations solely to embarrass them. Even if the Court believed this to be true, dismissal would not be the proper remedy. Moreover, the Court does not believe the allegations are sufficiently immaterial, impertinent or scandalous such that a motion to strike – had one been made – would be well-taken. See Fed. R. Civ. P. 12(f). Again, it may not have been necessary for Plaintiffs to plead their theory of the case with this much detail, but there is no basis for dismissing anything.

## E.

Count I is premised on violations of Title II of the Civil Rights Act, specifically 42 U.S.C. § 2000a-2. First Response argues Plaintiffs failed to satisfy the notice requirement contained in 42 U.S.C. § 2000a-3(c). The notice requirement provides that when an "alleged act or practice prohibited by" Title II is alleged to have occurred "in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice," no civil action may be brought until after written notice of the "alleged act or practice has been given to the appropriate State or local authority . . . ." First Response argues that Plaintiffs did not provide written notice to the Missouri Commission on Human Rights ("MCHR"). The notice requirement is jurisdictional, Bilello v. Kum & Go, LLC, 374 F.3d 656, 659 (8th Cir. 2004), which means (1) it is an issue the Court must consider even if the parties have not raised it and (2) if the requirement was not satisfied when the Amended Complaint was filed, the claim must be dismissed regardless of what happened (or will happen) thereafter (because jurisdiction must exist when the claim is asserted).

Plaintiffs' correctly point out that that the exhaustion requirement applies only to suits brought for injunctive relief under Title II – which is to say, it applies to all claims asserting violations of Title II because Title II does not allow for recovery of damages.

---

[3]The Court's discussion should not be taken as a ruling on the admissibility of evidence about the dress code and the City Council's actions in and after 2008.

None of the statutes addressing remedies for violations of section 2000a-2 state damages are allowed, and the absence of such a provision has led the Supreme Court to hold damages are not available. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 401-02 (1968); see also Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1329 (11th Cir. 2013) (discussing remedies under Title III of the Americans with Disabilities Act, which incorporates the remedies from Title II of the Civil Rights Act); Powell v. National Bd. of Medical Examiners, 364 F.3d 79, 86 (2d Cir. 2004) (same).[4] Plaintiffs concede they did not satisfy the notice requirement before filing suit or before filing the Amended Complaint,[5] but contend they were not required to give notice to the MCHR. Unfortunately, they only make this bare statement and do not explain why they were not required, which does not make for a compelling argument. The Court's independent review suggests the MCHR is the sort of governmental entity to which notice must be given. See Mo. Rev. Stat. § 213.065. The Court holds it lacks jurisdiction over Count I, so it is dismissed in its entirety.

F.

Cordish's Motion to Dismiss (Doc. # 26) is denied. First Response's Motion to Dismiss (Doc. # 35) is denied except with respect to its notice argument relating to

---

[4]The Court notes that Count I nonetheless seeks an award of damages.

[5]Plaintiffs have declared they will satisfy the notice requirement, at which time they will ask for leave to file a Second Amended Complaint to re-assert the claim if it is dismissed on this basis. Assuming such actions will cure the jurisdictional defect, the granting of such a request will depend on the progress made in the case at that time. The Court also notes that Count I is redundant: as noted in the discussion, Plaintiffs cannot recover damages – and all the injunctive relief they seek is equally available to them under Count II. The Court further believes it unlikely Plaintiffs could prevail on one claim and not the other. Plaintiffs should anticipate the need to explain the "need" for adding a seemingly redundant claim.

Count I. The Court concludes it lacks jurisdiction over Count I, so Count I is dismissed without prejudice.

IT IS SO ORDERED.


/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 26, 2014                    UNITED STATES DISTRICT COURT