IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| DANTE A.R. COMBS, individually and on behalf of all others similarly situated, and ADAM S. WILLIAMS, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 14-0227-CV-W-ODS |
| THE CORDISH COMPANIES, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

### ORDER AND OPINION GRANTING DEFENDANTS' MOTIONS
### TO STRIKE EXPERT TESTIMONY

Plaintiffs have designated Dr. Rosemary Erickson to provide expert testimony. Defendant First Response has filed a Motion to Strike. The other defendants ("The Cordish Defendants") have collectively filed their own Motion to Strike. Both motions (Doc. # 220 and Doc. # 222) are granted.[1]

### I. BACKGROUND

The original deadline for designating experts was January 15, 2015. Plaintiffs requested additional time to designate experts, and this request was denied in all respects save one. In an Order dated February 9, 2015, the Court allowed Plaintiffs "until and including March 9, 2015 to designate expert witnesses related to security matters." The Court extended the deadline in this respect based on its belief that

---
[1] In some sense the motions are moot. In a separate order the Court is granting Defendants' Motions for Summary Judgment on grounds largely unrelated to the issues presented in Dr. Erickson's report. In fact, Plaintiffs do not even cite Dr. Erickson's report in their oppositions to the summary judgment motions, so the Court's decision on those motions would not consider Dr. Erickson's report regardless of this ruling.

Plaintiffs' inability to timely designate such an expert had been hampered by Defendants' failure to respond to discovery responses. The Court even quoted a portion of Plaintiffs' rationale:

> Plaintiffs allege they "must have all of the security policies, procedures, reports, and video tape before any expert they consult can even determine that evaluating the security facts are within his area of expertise. . . . [A] security expert on issues concerning First Response can't be finalized until Plaintiffs have the security contract that existed between Defendant First Response and the Cordish Defendants, so that Plaintiffs' expert can assess who had responsibility for what." Doc. # 104 at 2.

Doc. # 126 at 8; see also Doc. # 126 at 6.

On March 9, 2015 Dr. Erickson completed her Expert Report. She describes herself as a "forensic sociologist" who has "devoted much of [her] professional career to research and training in crime and violence deterrence and security measures." Expert Report at 3. Most of her background seems devoted to evaluating the effective use of security measures. Expert Report at 3-4. Nonetheless, her expert opinion has nothing to do with security measures. Instead, she states that it is her "opinion that the information presented below from records, incident reports, depositions, and other sources cited will show the intentional policies and actions led to a pattern of discrimination for blacks not being able to go (or stay) at the KC Power and Light clubs, owned by Cordish, between the years of 2008-2013." Expert Report at 7.[2] She then reviews the evidence (consisting of statements of witnesses), Expert Report at 9-19, and summarizes the evidence as demonstrating

> the continuing pattern of discrimination against African Americans at the clubs through the use of changing music, random cover charges, continually changing dress codes, not taking reservations if a name sounded black or the person sounded black; running them away at the door by saying they were full or overbooked, even if they did have a reservation, picking people out of the line, having blacks step aside; arbitrary admission; arbitrary eviction; or rabbit-perpetrated eviction.

Expert Report at 20. The only comment Dr. Erickson makes regarding security operations is her statement that she reviewed the "operating manuals, training manuals,

---

[2] How Dr. Erickson is able to opine that "Cordish" owns the clubs is somewhat of a mystery, but the Court will not dwell on this point.

employee handbooks, contracts, and so on" and concluded that "they appear to be in compliance with current standard practices for the workplace in general and the industry of nightclubs, bars and restaurants, as well as security guard companies." Expert Report at 30. She then offers the following caveat unrelated to security issues, explaining that the case "is not about the appropriateness of the written policies" but rather "how the policies were not carried out and how the unwritten policies on discrimination took precedence over the written policies on the issue of diversity." Expert Report at 30. Dr. Erickson concludes her report with the following paragraph:

> It is my opinion that the Cordish Companies, ECI, First Response, and their related entities and agents discriminated against African Americans in order to discourage them from coming to the Kansas City Power and Light District and into the Cordish Clubs. It was a continuous, repeated, targeted, racist, discriminatory, exclusionary pattern, which was directed specifically toward African Americans. The attitude and resulting behavior and actions were the outgrowth of a corporate culture of racism and discrimination, which resulted in the incidents suffered by Combs and Williams.

Expert Report at 30.

## II. DISCUSSION

Dr. Erickson's testimony will not be allowed for several reasons. First and foremost, her disclosure was untimely. Plaintiffs did not designate Dr. Erickson as an expert until March 9, so her designation was timely only by virtue of the Court's February 9 Order. In allowing Plaintiffs additional time to designate an expert related to security matters and First Response, it was clearly the Court's intent that the expert so designated offer opinions about . . . security matters. While Dr. Erickson might be qualified to offer such opinions (an issue the Court does not address), it is quite clear she is offering a different opinion entirely. She has reviewed witness statements, lawsuits, and reports, and concluded The Cordish Companies, ECI[3] and First Response

---

[3]There are two Defendants who could be abbreviated "ECI." The Expert Report does not make clear whether it is one, the other, both, or neither.

discriminated against African Americans. Two of those entities are not security companies, and Dr. Erickson's opinion has nothing to do with security issues.

Plaintiffs resist this conclusion by contending "Dr. Erickson's entire report, save perhaps three paragraphs, directly addresses the behavior and actions of security guards, bouncers, and hidden security policies, practices and procedures used to accomplish the illegal objective of keeping 'undesirables' (blacks) out." Doc. # 236 at 10. This is not a fair description of the Expert Report. More importantly, this is not the type of opinion for which the deadline was extended, and it is not the type of opinion for which the deadline would have been extended. The deadline for designating other experts was not extended in part because Plaintiffs had engaged in "foot dragging" and had not demonstrated that Defendants were responsible for Plaintiffs' inability to timely designate experts. Doc. # 126 at 4. The extension for security experts was based on the Court's perception that Defendants had delayed in providing security materials, but Dr. Erickson's opinions are not based on those security materials, and the Court would not have granted a request for additional time to designate an expert who had read the depositions and other documentary evidence in order to opine that Plaintiffs suffered from discrimination. The Court extended the deadline based on Plaintiffs' explanation that a "security expert on issues concerning First Response" could not be finalized – Dr. Erickson's opinion is not related to security issues, extends beyond First Response, was not justified by the reasons the Court relied upon in extending the deadline to this limited extent, and is something entirely different from what the Court permitted.

The second reason Dr. Erickson's opinion will not be allowed is that it is not helpful to the jury. An expert may offer an opinion if their "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Plaintiffs propose to have Dr. Erickson tell the jury that she has reviewed the evidence in the case and that in her opinion Defendants have discriminatory intent, Defendants employ discriminatory policies, and Plaintiffs were subjected to discrimination on the three days in question. The jury does not need an expert's help to review the evidence and decide these issues. Opinions about the ultimate issue are not excludable simply because they relate to the ultimate issue in the case, Fed. R. Evid. 704(a), but they can be excludable for other reasons –

4

including the fact that they are not helpful to the jury as required by Rule 702(a). An expert's opinion about the ultimate issue is appropriate when the ultimate issue is one for which the jury requires an expert's assistance in the first place – like for instance, when the ultimate issue turns on the cause of a person's death. On the other hand, "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." American Auto. Ins. Co. v. Omega Flex, Inc., 783 F.3d 720, 725 (8th Cir. 2015) (quotation omitted). A jury would be entirely capable of reviewing the evidence and forming its own conclusions about the facts.

Finally, the Court is not persuaded Dr. Erickson's opinions are reliable. To be admissible, an expert's opinion (among other things) "must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001) (quotation omitted). As noted, Dr. Erickson has essentially reviewed depositions and other anecdotal statements, concluded they are accurate, and from there concluded Plaintiffs were subjected to discrimination. There is no particular reason to think Dr. Erickson's assessment of witness credibility is reliable or trustworthy (or admissible). Plaintiffs insist Dr. Erickson reviewed the reports from First Response – but she draws no conclusion from those reports because they "do not give a true and factual representation of the actions taken to bar African Americans and/or evict them from the clubs." Expert Report at 29. She explains that this is why she "will rely instead on the evidence from the depositions, affidavits, and other cumulative evidence." Expert Report at 29. There is no reason to think that her ability to read and summarize depositions, affidavits, and other evidence is particularly trustworthy such that she should be permitted to share her opinions about purely factual matters with the jury.[4]

---

[4] There is one particular issue that deserves additional mention. Establishing that the Cail Hendry and the unidentified person outside of Tengo's was a rabbit is critical to Plaintiffs' theory of recovery. Dr. Erickson does not explain any basis for her opinion that Hendry or the unidentified man outside of Tengo's was a rabbit (other than the fact that rabbits allegedly existed elsewhere), and she does not have any particular expertise in identifying rabbits. The Court is thus unable to conclude her opinion on this point is reliable or trustworthy.

5

## III. CONCLUSION

The Motions to Strike are granted.

IT IS SO ORDERED.

                                                /s/ Ortrie D. Smith
                                                ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 15, 2015                        UNITED STATES DISTRICT COURT