IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DANTE A.R. COMBS, individually and )
on behalf of all others similarly situated, )
and ADAM S. WILLIAMS, individually )
and on behalf of all others similarly )
situated, )
 )
            Plaintiffs, )
 )
vs. ) Case No. 14-0227-CV-W-ODS
 )
THE CORDISH COMPANIES, INC., )
et al., )
 )
            Defendants. )

<u>ORDER AND OPINION DENYING PLAINTIFFS' AMENDED MOTION TO AMEND OR
ALTER JUDGMENT AND FOR RELIEF FROM JUDGMENT</u>

I.  INTRODUCTION

This case was brought by two plaintiffs against five defendants, asserting claims arising under 42 U.S.C. § 1981.  The case involved three different incidents:

1. The Maker's Mark Incident – an August 2010 incident involving both Plaintiffs,
2. The Mosaic Lounge Incident – an incident occurring at an unspecified time in the early summer of 2011 that involved only Plaintiff Combs, and
3. The Tengo Incident – an incident occurring in July 2011 that also involved only Plaintiff Combs.

On June 15, 2015 the Court granted Defendants summary judgment for the following reasons:

     1.    Combs was judicially estopped because he failed to adequately disclose his claims as an asset in his bankruptcy proceeding.

2. With respect to the Maker's Mark incident, there was no evidence connecting any of the Defendants to the events in question. Moreover, there was no evidence demonstrating anything that happened was based on Plaintiffs' race.

3. With respect to the Mosaic Lounge Incident, the Court concluded there were disputed issues of material fact that would have precluded entry of judgment as a matter of law with respect to Defendant Lounge KC, but there was no evidence demonstrating any of the other Defendants had any involvement in the events in question. However, Combs was the only plaintiff with a claim arising from this incident, and the Court's ruling regarding judicial estoppel dictated that judgment be entered in favor of Lounge KC. The ruling on judicial estoppel also served as an alternative basis for entering judgment in favor of the remaining Defendants.

4. There was no evidence suggesting Combs's race had anything to do with the Tengo Incident. There was also no evidence connecting any of the Defendants to the Tengo Incident. Finally, the Court's ruling regarding judicial estoppel served as an alternative basis for entering judgment in Defendants' favor.

Now pending is Plaintiffs' Amended Motion to Amend or Alter Judgment and For Relief from Judgment ("the Amended Motion").[1] The first part of the Amended Motion attacks the application of judicial estoppel to Combs's claims and invokes Rules 59(e), 60(b)(1), 60(b)(2), and 60(b)(6) of the Federal Rules of Civil Procedure. Plaintiff advances different legal theories under each Rule. The second part of the Amended Motion contends that if the Court agrees with any of the arguments regarding judicial estoppel the Court can then reconsider its rulings on the merits and to that end Plaintiffs seek leave to file a sur-reply; here Plaintiffs rely on Rules 60(b)(1) and 60(b)(6).

The Court rejects all of Plaintiffs' arguments. Plaintiffs' request for leave to file a Motion for Leave to File a Sur-Reply is denied.

---

[1] Plaintiffs explain that the only differences between the Amended Motion and the previously filed motion relate to an exhibit reference and the attachment of certain exhibits. Amended Motion (Doc. # 275) at 1, n.1. Accordingly, the Court will focus exclusively on the Amended Motion for Reconsideration and the original motion (Doc. # 274) is deemed moot.

## II. DISCUSSION

### A. Judicial Estoppel

Before addressing Plaintiffs' arguments, a summary of the Court's decision and subsequent events is in order. Plaintiff Dante Combs ("Combs") filed a voluntary petition for Chapter 7 relief in April 2011. This was after the Maker's Mark Incident, but Plaintiff did not list his claims against Defendants as an asset in his bankruptcy schedules. Plaintiff also did not amend his schedules to include the other two Incidents. Combs received a Chapter 7 discharge in August 2011. The Court held his claim was an asset that should have been disclosed, and Plaintiffs now "agree[ ] with the Court in its recitation of bankruptcy law regarding what may constitute estate property . . . ." Amended Motion at 4.

In 2014, Combs decided to file this lawsuit. When issued a discovery request asking whether he had previously filed bankruptcy, Combs declined to answer the question. Thereafter, Combs joined in a Motion for Class Certification, wherein he represented to the Court that he was a typical member of the class and that he could adequately represent the class, all without divulging that he was subject to a unique defense. In April 2015 the Cordish Defendants filed a Motion for Summary Judgment raising, among other grounds, judicial estoppel based on Combs' failure to disclose this asset in his bankruptcy schedules. Only then did Combs take action, electing at that time to try to reopen the bankruptcy proceeding so that he could amend his bankruptcy schedules and disclose this asset.

Combs has provided varying explanations for his failure to disclose his claim as an asset in his bankruptcy schedules. These explanations are detailed in the Court's June 15 Order, but a brief listing of them includes:

- He was unaware of Defendants' discriminatory actions, even though near the time of the incident he had consulted friends who were attorneys and those friends had advised him to file suit.
- It never occurred to him that these were claims because he did not plan to pursue them.

3

- He did not think he had to include them on his bankruptcy schedules because he thought the claims were worthless.
- While he believed the incidents were driven by race and thus constituted discrimination, he did not consider filing a lawsuit because he did not know who to sue, even though he consulted friends who were attorneys and those friends had advised him to file suit.

Several of these explanations are contradictory. For instance, Combs claims both (1) he was unaware that he was the victim of discrimination and (2) that he knew he was the victim of discrimination but did not know who to sue or did not want to sue. He also contends that he had no idea he had a claim and (contradictorily) that he knew he had a claim but consciously decided not to pursue it. Plaintiffs were asked to explain these discrepancies, Doc. # 228, but they never did.[2] The Court addressed the import of these contradictions thusly:

> Combs has not suggested he did not understand Schedule B sought information about the claims. He seems to argue that he did not have to disclose the claims because he decided not to pursue them – but of course, having filed for bankruptcy, it was not his decision whether to pursue the claims, nor was it his decision to disclose some of his assets and not others. The Schedule B was clear – it required him to disclose "contingent and unliquidated claims of every nature," and he was required to do this so the Bankruptcy Trustee could decide what to do with the claims. The fact that Combs did not want to pursue the claims did not mean he could fail to disclose them to the Bankruptcy Court.
>
> In any event, what Combs has described is not inadvertence. It is clear that he knew he had the claims, and their omission from Schedule B was not inadvertent. Rather, by his own admission, Combs did not disclose them because he did not think they had any value – until, of course, more than two years later when he decided they actually had

---

[2]In the Amended Motion Plaintiffs supply yet another piece of evidence related to this issue. According to Plaintiffs, during a meeting with their bankruptcy counsel Combs and his wife were specifically asked about "causes of action" so that any such assets could be listed on the bankruptcy schedules. Amended Motion at 14, n.16. This fact, coupled with Combs's admission that he knew he had a claim and had actually talked to friends who were lawyers but elected not to pursue it (either because he thought it was too hard to pursue or valueless) further substantiates the Court's conclusion that Plaintiff was aware that he had an asset that should have been listed on his Bankruptcy Schedules.

4

value and that he would pursue them on his own. At that point, his
purported reason for not including them on the Schedule B – a perceived
lack of value – was no longer true, yet Combs did not take any action to
rectify matters in his bankruptcy case. When asked in an Interrogatory
about the bankruptcy in October 2014, Combs did not take any action to
rectify matters in his bankruptcy case. In December 2014, Combs
responded to the Interrogatory in a manner that failed to divulge the
bankruptcy case's existence. Also in December 2014, Combs
represented to this Court that his claims were typical of all other members
of the proposed class and that he could adequately represent the class,
but failed to mention the bankruptcy – which is a concern because the
existence of the bankruptcy discharge constituted a significant and well-
recognized basis for undercutting these contentions.

Doc. # 269 at 17. The Court then analyzed the legal standard for judicial estoppel generally and specifically in the context of a plaintiff who has failed to list a claim in a prior bankruptcy proceeding, and concluded that Plaintiff's creditors had been impaired because of the lost ability to liquidate an asset that might have resulted in them receiving more money than they did. The Court also noted that judicial interests had been impaired, "both in terms of . . . consideration of the Motion for Class Certification and the impact Combs's actions have on the trial schedule." Doc. # 269 at 19.[3]

As noted earlier, Combs sought to reopen his bankruptcy case so he could amend his schedules. On June 5 the Bankruptcy Court held a hearing, and on June 16, 2015 – one day after the Court entered judgment – issued a ruling allowing Combs to reopen his bankruptcy proceeding and amend his schedules after concluding Combs had not demonstrated bad faith.[4] Thereafter, the Trustee abandoned the asset.[5]

---

[3] Plaintiffs continue to insist that Defendants have not suffered any prejudice. As detailed in the Court's ruling and the cases cited therein, this is not the proper focus. The focus is on (1) the creditors, (2) the bankruptcy system, and (3) this Court.

[4] The Court takes judicial notice of the Bankruptcy Court's ruling. E.g., Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005). Therein, the Bankruptcy Court cited Gillman v. Ford, 492 F.3d 1148 (10th Cir. 2007) for the standard governing the motion to reopen. In re Combs, No. 11-21183, slip op. at 12 & n.18 (Bankr. Kan. June 16, 2015). The Bankruptcy Court also acknowledged that it was not deciding whether Combs's claims should be judicially estopped but nonetheless addressed the standard for judicial estoppel. Id. at 13. Plaintiffs do not suggest the Bankruptcy Court actually decided the issue of judicial estoppel, nor do Plaintiffs argue the Bankruptcy Court's subsequent

5

With this background in place, the Court can analyze Plaintiffs' arguments.

### 1. Rule 59(e)

A motion for relief under Rule 59(e) is used to correct manifest errors of law or to present newly discovered evidence. United States v. Metropolitan St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006). Plaintiffs invoke Rule 59(e) in an attempt to present what they describe as newly discovered evidence; namely, the transcript from the June 5 hearing. To demonstrate they are entitled to relief, Plaintiffs "must show that (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover the evidence before the end of trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result." Id. The Court concludes Plaintiffs have failed to demonstrate any of these requirements.

For the first two requirements, Plaintiffs acknowledge that the hearing took place before the Court ruled on the Motions for Summary Judgment, but emphasize that the transcript did not exist until after. This is irrelevant because the transcript itself is not evidence; only the statements made therein can be considered evidence. Plaintiffs do not identify any evidence that was not available to them when they were obligated to respond to the Motions for Summary Judgment. Moreover, the Court doubts there is any such evidence because the transcript's Table of Contents reveals that almost all of the testimony came from Combs himself, and all of the testimony was supplied by people from whom he could have obtained statements before the June 5 hearing. This

---

decision binds this Court in any way. See Amended Motion at 2 ("Plaintiffs labor under no illusion that the Bankruptcy Court's June 16, 2015 Order is more than persuasive authority upon this Court."). The Court need not decide the extent to which the Bankruptcy Court's decision is persuasive because the issues before the Bankruptcy Court were not the same issues that were (and are) before this Court.

[5]In its June 15 Order, the Court mentioned the possibility of this occurring and further observed that if that turned out to be the Bankruptcy Trustee's decision, "one wonders if it is the same decision that would have been made if Combs's claims had been revealed when the bankruptcy was pending. If not, this constitutes an unfair advantage to Combs at the expense of his creditors." Doc. # 269 at 19 & n.9.

6

leads to the second requirement: assuming without deciding that Plaintiffs acted diligently in obtaining the transcript, they did not act diligently in presenting any of the useful information in response to the Motions for Summary Judgment. Plaintiffs could have easily obtained affidavits from Combs, his wife, or counsel and supplied them as exhibits to their Suggestions in Opposition. Indeed, affidavits from Combs *were* supplied.

Plaintiffs also have not satisfied the third and fourth prongs because they have not directed the Court to anything in the transcript. In their Suggestions in Support they merely presented the transcript for the Court's consideration, but the Court is neither obliged nor inclined to review the transcript to find testimony favorable to Combs – so Plaintiffs have failed to demonstrate the transcript contains any evidence that is material or that a different result would likely be produced. Plaintiffs cite some passages from the transcript in the Reply Suggestions, but waiting until the Reply Suggestions to substantiate an argument is simply too late.

Furthermore, even without looking at the transcript in an attempt to discern what Plaintiffs want the Court to see, the Court has strong reason to believe that it would not be useful to Plaintiffs. One of two things is true: either Combs testified consistently with one of the various explanations he already provided this Court, or he supplied a new explanation for failing to list the asset on his bankruptcy schedules. If Combs reiterated a previously-advanced explanation, then such testimony would be cumulative and would not form the basis for Rule 59(e) relief. If Combs advanced a new explanation (and could justify failing to advance any such new explanation in response to the Motions for Summary Judgment), this would only further the pre-existing discrepancies and would not lead to a different conclusion regarding judicial estoppel.[6]

Plaintiffs have not demonstrated anything extraordinary in these circumstances. More importantly, they have not satisfied the requirements for obtaining relief based on newly discovered evidence. As this is the sole justification for relief under Rule 59, the request for relief under that rule is denied.

---

[6]The Court has examined the transcript passages referenced in Plaintiffs' Reply Suggestions. This review confirms that they merely repeat what Combs said in response to the Motion for Summary Judgment and thus nothing new is presented.

7

## 2. Rule 60(b)(1)

Rule 60(b)(1) allows for relief from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." Plaintiffs contend the Court "inadvertently classified the three incidents that form th[e] basis of the instant action as being alike in the duties and responsibilities that each represented to the bankruptcy estate." Amended Motion at 10. Plaintiffs label this as an issue of "judicial inadvertence," but in substance the argument is that the Court made a legal mistake. Plaintiffs contend Combs's obligation to report the Maker's Mark incident differed from his obligation with respect to the other two incidents because the Maker's Mark incident occurred pre-petition and the other two occurred post-petition (albeit prior to discharge). The Court declines to grant relief on this ground for two reasons. First, Plaintiffs have not established that a mistake was made (or that inadvertence occurred). Second, even if there was a mistake or inadvertence, Rule 60(b)(1) would not provide relief under these circumstances.

First, as to the merits. The Court begins with a very important observation – *Plaintiffs did **not** present this argument in response to the Motions for Summary Judgment!* In response to the Defendants' invocation of judicial estoppel, Plaintiffs argued (1) Combs was attempting to reopen his bankruptcy case, (2) judicial estoppel was inapplicable because Combs acted inadvertently, and (3) Combs received no advantage, and his creditors were not disadvantaged. Doc. # 242 at 48-50. And, while the Court's independent research (conducted in light of the Amended Motion) reveals a legal basis for distinguishing between assets acquired pre-petition and post-petition in certain circumstances, even now Plaintiffs have not established that this legal principle applies in this context. They cite two Tenth Circuit decisions that they describe as "discussing how a trial court must determine whether a cause of action is sufficiently rooted in the prebankruptcy past to be considered part of the bankruptcy estate," Amended Motion at 10, but Plaintiffs do nothing more. They do not set forth the legal principle, and they do not apply the legal principle to this case. Amended Motion at 10.[7]

---

[7]In the first case, the Tenth Circuit concluded a certain cause of action was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it was properly considered part of the

8

Case 4:14-cv-00227-ODS   Document 289   Filed 08/28/15   Page 8 of 18

Plaintiffs' Reply Suggestions shed no further light on this issue: the matter is not even discussed. The Court is not required to find a favorable analysis and make legal arguments for parties.

Plaintiffs also contend the Bankruptcy Court "determined that the three claims are not alike, and further, that Plaintiff Combs was under *no* duty to disclose the claims at all." Amended Motion at 10 (emphasis in original). Plaintiffs provide no citation for this proposition, and the Court cannot find support for it in the Bankruptcy Court's decision. To the contrary: the Bankruptcy Court said the exact *opposite*, declaring that it "will not evaluate Debtors' failure to update their schedules after the second and third alleged incidents, but focuses instead on Debtors' failure to disclose the claim based on the first incident." In re Combs, slip op. at 8 n.9.[8] The Bankruptcy Court never held Combs was not obligated to report his claim; it merely held that his failure to do so did

---

bankruptcy estate." Clementson v. Coutnrywide Fin. Corp., 464 Fed. Appx. 706, 711-12 (10th Cir. 2012) (quotation omitted). There is little explanation as to how the Tenth Circuit reached this decision (probably because the Tenth Circuit did not intend on publishing this decision) and the result is actually contrary to the one Plaintiffs seek – so the Court does not know how it establishes the correctness of Plaintiffs' position. The other case involves a contingent interest in property (bonuses) that existed when the bankruptcy petition was filed. In re Dittmar, 618 F.3d 1199 (10th Cir. 2010). Like Clementson, this case concludes the interest in the bonuses was "sufficiently rooted in the pre-bankruptcy past" to render them part of the estate. Id. at 1209-10.

Plaintiff does not apply these cases to the present one by explaining how they establish whether or not all of the claims are treated singly or collectively, or are "sufficiently rooted in" Combs's "pre-bankruptcy past" such that they are not entangled with his ability to make an unencumbered fresh start. These two cases do not establish Plaintiffs are correct – at least, they don't without further explanation/argument that Plaintiffs have not provided.

[8]The Bankruptcy Court noted that the Tenth Circuit had previously declined to decide whether a debtor must disclose post-petition assets until presented with "a bankruptcy case where the question is whether a discharge of bankruptcy should be granted to a debtor given his failure to amend his schedules, and not in a judicial estoppel case." In re Combs, slip op. at 8 n.9 (quoting Vehicles Market Research v. Mitchell Int'l, 767 F.3d 987, 999 (10th Cir. 2014)). The Bankruptcy Court then followed suit, providing the statement contained in the text. Later, the Bankruptcy Court held that the second and third incidents still did not provide Combs with a basis for believing he had a cause of action, and that he had no basis for believing he had a cause of action until 2014. In re Combs, slip op. at 22. The Court finds nothing in the Bankruptcy Court's Order determining that Combs was not legally required to disclose anything.

9

not constitute the bad faith necessary to justify denying Combs's motion to reopen the bankruptcy, so there was no need to decide whether he was legally obligated to do so. In summary, Plaintiffs (1) did not present this argument in response to the Motions for Summary Judgment, (2) have generally described an issue that might be helpful to them, (3) have not set forth the applicable legal analysis for that issue, (4) have not applied the legal analysis to the facts of this case, and (5) have misrepresented the Bankruptcy Court's holding. This does not establish that the Court made a mistake or inadvertently overlooked an issue.[9]

Second, Rule 60(b)(1) would not provide a vehicle for relief in any event. As stated earlier, Rule 60(b)(1) permits a possibility of relief for both "mistake" and "inadvertence." However, distinguishing between the two is important, because "[i]t remains the law in this Circuit that 'relief under Rule 60(b)(1) for judicial error other than for judicial inadvertence' is not available." Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 460-61 (8th Cir.), cert. denied, 531 U.S. 929 (2000) (quoting Fox v. Brewer, 620 F.2d 177, 180 (8th Cir. 1980)). While "judicial inadvertence" is not clearly defined in decisions of the Eighth Circuit, one thing appears clear: a claim of legal error is not judicial inadvertence.[10] When confronted with a purported Rule 60(b)(1) motion challenging a dismissal because the Court's legal reasoning was incorrect, the Eighth Circuit held "the motion simply asserts that the court erred as a matter of law in granting judgment for the individual defendants. Thus the motion did not set forth a proper ground under Rule 60(b)(1) for relief from judgment." Spinar v. South. Dakota Bd. of Regents, 796 F.2d 1060, 1063 (8th Cir. 1986); see also United States v. Mask of Ka-

---

[9]Interestingly, Combs's Amended Bankruptcy Schedule lists this entire discrimination lawsuit as an asset and not just a single claim from it. This could be an exercise of caution (as opposed to a tacit admission that this entire suit by him constitutes property of the bankruptcy estate), but even if it is the need for such caution further suggests that Combs's obligations and interpretation of the law are not as clear as Plaintiffs now insinuate.

[10]One commentator has suggested that in the Eighth Circuit "judicial inadvertence . . . apparently means an error that causes the judgment to fail to reflect the true intent of the court." 12 *Moore's Federal Practice*, § 60.41[4][b][viii] (Matthew Bender 3d Ed.).

Nefer-Nefer, 752 F.3d 737, 743 (8th Cir. 2014) ("Rule 60(b) was not intended as a substitute for a direct appeal from an erroneous judgment. Thus, the proper course when the government disagreed with the district court's interpretation [of law] was a direct appeal, not a Rule 60(b) motion.") (quotation omitted).

The Court acknowledges the Amended Motion was filed within the time limits permitted for appeal, and thus would not circumvent the time limits for appeal. In such circumstances, some Courts of Appeal would permit the district court to consider the claim of legal error rather than force the litigant to appeal the matter. E.g., Mendez v. Republic Bank, 725 F.3d 651, 658-60 (7th Cir. 2013).[11] However, the Eighth Circuit does not appear to be one of those courts. Plaintiffs insist that Rule 60(b)(1) permits district courts to correct "obvious errors" that are "apparent on the record," but cites no binding authority on this point. More importantly, even if this is true, as discussed above Plaintiffs have not demonstrated that there was an error, much less an "obvious" one. An error (much less an obvious one) is not demonstrated when Plaintiffs (1) fail to present an argument when it should be presented before judgment and then (2) merely allude to it in a Rule 60(b)(1) motion without any explanation or application of the law to the facts of the case.[12]

---

[11]"Our statements rejecting the use of Rule 60(b) to correct appealable errors have all been motivated by the concern that Rule 60(b) could be used to circumvent the deadlines for filing appeals. . . . We have used overly broad language that may be read to foreclose Rule 60(b) relief for any error that can be corrected on appeal, but we have also affirmed the use of Rule 60(b) to correct errors that could have been corrected on appeal when the concern about circumventing the deadline to appeal is absent. . . . As Judge Friendly observed nearly fifty years ago, no good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial proceedings, when the trial court is equally able to correct its decision . . . ." Mendez, 725 F.3d at 559-60 (quotations omitted).

[12]The concepts of "judicial inadvertence" or "judicial mistake" are not intended to provide counsel with a second opportunity to present arguments that could have been (but were not) raised at the appropriate time. If "judicial inadvertence" is going to mean anything, it should refer to the Court's failure to acknowledge or address an argument actually raised by the parties. It seems a mockery of the Court's and counsel's roles to suggest the Court "inadvertently" failed to consider an argument that counsel did not present for consideration (and which has still not been fully developed). Again – it is not the Court's role to ferret out arguments that might help Plaintiffs. Cline v. Hoogland, 518 F.2d 776, 778 (8th Cir. 1975).

A concluding (but related) thought: Rule 59(e) explicitly permits a district court to "correct manifest errors of law." Plaintiffs did not present this argument as a ground for relief under Rule 59(e), and with good reason: "'Such motions cannot be used to . . . tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.'" Metropolitan St. Louis Sewer Dist., 440 F.3d at 933 (quoting Hagerman v. Yokon Energy Corp., 839 F.2d 407, 414 (8th Cir.), cert. denied, 488 U.S. 820 (1988)); see also Preston v. City of Pleasant Hill, 642 F.3d 646, 652 (8th Cir. 2011); Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 771 (8th Cir. 2001); Concordia College Corp. v. W.R. Grace & Co., 999 F.2d 326, 330 (8th Cir. 1993), cert. denied, 510 U.S. 1093 (1994). Plaintiffs are attempting to do under Rule 60(b) something that is *forbidden* to them under Rule 59(e), and Rule 60(b) cannot be used in this manner. "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations [or] legal theories . . . ." Jinks v. AlliedSignal, Inc., 250 F.3d 381, 385 (6th Cir. 2001).

### *3. Rule 60(b)(2)*

Rule 60(b)(2) allows a court to grant relief from judgment if a party demonstrates there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." The standard for relief based on newly discovered evidence under Rule 59 applies to a motion under Rule 60(b)(2). E.g., Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1036 (8th Cir. 2007); Metropolitan St. Louis Sewer Dist., 440 F.3d at 933 n.3. The request for relief under Rule 60(b)(2) is denied for the same reasons expressed in Part II.A.1, above.

### *4. Rule 60(b)(6)*

Rule 60(b)(6) is a catch-all, permitting relief from a judgment for "any other reason that justifies relief." E.g., Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863-64 (1988); Watkins v. Lundell, 169 F.3d 540, 544 (8th Cir.), cert. denied, 528 U.S. 928 (1999). Plaintiffs suggest that extraordinary circumstances are presented by

12

the hearing transcript and the Bankruptcy Court's subsequent determination that Combs should be allowed to reopen his bankruptcy case and amend his bankruptcy schedules. The hearing transcript's "creation" after the judgment in this case is not extraordinary for the reasons expressed earlier in Part II.A.1. Similarly, the Bankruptcy Court's resolution of a different issue *after* the Court resolved the issues involved in this case is not an extraordinary circumstance. To the extent Plaintiffs suggest the Bankruptcy Court's subsequent reopening of Combs's case alters the analysis of judicial estoppel, the Court already addressed this potential eventuality in its June 15 Order.[13] Finally,

---

[13]Specifically, the Court held as follows:

> The Court's view would not change even if the Bankruptcy Court reopened Combs's bankruptcy. Permitting a plaintiff to "back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing assets only if he is caught concealing them." Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1288 (11th Cir. 2002). As the Fifth Circuit held, "Judicial estoppel was designed to prevent such abuses." In re Superior Crewboats, Inc., 374 F.3d 330, 336 (5th Cir. 2004). "A doctrine that induces debtors to be truthful in their bankruptcy filings will assist creditors in the long run (though it will do them no good in the particular case)-and it will assist most debtors too, for the few debtors who scam their creditors drive up interest rates and injure the more numerous honest borrowers." Cannon-Stokes v. Potter, 453 F.3d 446, 448 (7th Cir.), cert. denied, 549 U.S. 1099 (2006).
>
> In the particular circumstances of this suit the interests of this Court have also been impaired, both in terms of its consideration of the Motion for Class Certification and the impact Combs's actions have on the trial schedule. Combs's bankruptcy should have been revealed to the Court when Combs represented that he was a typical member of the class he proposed and that he could adequately represent the class's interests. As noted earlier, even if the Bankruptcy Court reopens the case it will be the Bankruptcy Trustee, not Combs, who can prosecute these claims. The Bankruptcy Trustee has had nothing to do with this case, and it is unknown (but doubtful) whether the Bankruptcy Trustee can be ready for trial in early August. . . . [T]hat contingency will not be answered until the contingency regarding the reopening of the case is resolved – and even then, it may be that both contingencies will not be resolved quickly enough to retain the trial setting. This circumstance is entirely the product of Combs's failure to address this issue until after it was raised in a dispositive motion.

13

Plaintiffs' repeated complaint that Defendants did not advise them sooner about the potential implications of Combs's bankruptcy is not persuasive, even when coupled with counsel's representation that she was unaware of the potential problem. Defendants were not obligated to provide Plaintiff with legal advice.

### B. The Sur-Reply

Plaintiffs contend they wanted to file a Sur-Reply to (1) address developments in the Bankruptcy Court and (2) respond to what they describe as new issues presented for the first time in the Reply Suggestions filed in support of the Motions for Summary Judgment. Realizing they would have only one opportunity to ask for leave to file a Sur-Reply, Plaintiffs waited for proceedings in Bankruptcy Court to conclude – but this Court ruled on the Motions for Summary Judgment before the Bankruptcy Court issued its ruling.[14]

Plaintiffs suggest that if the Court agrees with them regarding judicial estoppel, the Court is free to reconsider its rulings regarding the merits. Amended Motion at 17. This is not true: with the exception of a single issue (Combs's arguments regarding Lounge KC's refusal to admit him), the Court issued *alternative* rulings in favor of Defendants. Even if Combs was not judicially estopped, Defendants are entitled to summary judgment on the remaining aspects of this case. The evidentiary failings on the merits served as an alternative basis for the Court's judgment, and removal of judicial estoppel would not automatically re-open the entire case.

Nonetheless, Plaintiffs seek leave to file a Sur-Reply after the Motions for Summary Judgment have been ruled, and invoke Rules 60(b)(1) and 60(b)(6) as providing grounds for the extraordinary relief of permitting additional briefing on a

---

Doc. # 269 at 18-19.

[14]Plaintiffs should not have been surprised by the Court's decision to rule without regard to whether the Bankruptcy Court had acted, given the Court's refusal to grant Combs an open-ended extension of time to respond to the Cordish Defendants' Motion for Summary Judgment until after the Bankruptcy Court issued a ruling. See Doc. # 240.

14

motion that has already been ruled.  They suggest that counsel's failure to file a Motion for Leave to File Sur-Reply before the Court ruled on the Motions for Summary Judgment constituted excusable neglect within the meaning of Rule 60(b)(1).  Alternatively, they suggest the relief should be granted under Rule 60(b)(6) in order to achieve justice.

The Court starts with an important premise: sur-replies are not contemplated by the Local Rules of this Court.  They are sometimes granted in an individual judge's discretion, and even then only to respond to an important argument that was raised for the first time in the opposing party's reply suggestions.  Even when there is an apparent "need" for a sur-reply, one may not be permitted if the issue plays no part in the Court's opinion, if the Court ignores the argument (because new arguments should not ordinarily be presented in reply suggestions), or if the Court rules the issue in favor of the party seeking to file a sur-reply.  However, sur-replies are not permitted simply to give a party a chance to rehash a previously-presented point, or to permit a party to present an argument that should have been presented previously.  Accordingly, any request to file a sur-reply must specify the reason why its filing should be permitted.

Here, Plaintiffs have not provided the belated Sur-Reply.  They represent that it was being filed as a supplement to the Amended Motion, Amended Motion at 2, but it was not.  Plaintiffs have, however, supplied (as Exhibit B to the Amended Motion) their Motion for Leave to File Sur-Replies.  Exhibit B is mostly devoted to discussing the proceedings in Bankruptcy Court to explain why it was not filed before the Court ruled on the Motions for Summary Judgment and does not spend much time actually justifying the filing of a Sur-Reply.  With respect to the issue of judicial estoppel, it seems that the Plaintiffs contend the bankruptcy proceedings justify the filing of a Sur-Reply.  The Court disagrees: the existence of pending bankruptcy proceedings was known to the Court, was largely irrelevant to the issues raised in the Motions for Summary Judgment, and do not serve as grounds justifying the filing of a Sur-Reply.

With respect to the merits, Exhibit B contends the Cordish Defendants presented two new issues in their Reply Suggestions.  The first issue is evidentiary: the Cordish Defendants argued some of Plaintiffs' deposition citations could not be used in this proceeding.  This did not justify the filing of a sur-reply because the Court did not grant

judgment to Defendants on this basis. Indeed, the Court largely rejected the Cordish Defendants' arguments. Doc. # 269 at 5 n.4.

The second allegedly "new issue" interjected for the first time in the Cordish Defendants' Reply Suggestion is a suggestion that Plaintiffs were required to "have . . . evidence that each of the Defendants, individually, acted to discriminate against Plaintiffs, contrary to their previous position, which had always been addressed to the Defendants 'collectively'." Exhibit B at 5 n.4. Placed in context with the remainder of Exhibit B, Plaintiffs *seem* to be suggesting that Plaintiffs believed they did not need to prove liability on a defendant-by-defendant basis because the Cordish Defendants filed joint motions and sometimes referred to themselves collectively. For instance, the Cordish Defendants argued "[t]here is no evidence that the Defendants did anything to interfere with Plaintiff Combs' activity protected by § 1981." Doc. # 214 at 16 (emphasis deleted). As best as the Court can tell, Plaintiffs are contending the use of such phrasing in joint motions lulled them into believing they did not need evidence demonstrating each Defendant's liability on an individual level, and only realized they needed such evidence (and argument) after reviewing the Cordish Defendants' Reply Suggestions in Support of their Motion for Summary Judgment.

Plaintiffs' argument is . . . untenable (at best). The use of joint motions signifies nothing more than the parties have the same attorneys – much like the two Plaintiffs have the same attorneys. To the extent that it is relevant, the Court finds no startling or "new" arguments in the Reply Suggestions (Doc. # 262) that – for the first time – suggested Plaintiffs needed to have proof establishing liability for each of the Cordish Defendants. In context, the Cordish Defendants simply set forth the undisputed evidence and contended that none of that evidence demonstrated any of the Cordish Defendants were liable.

More importantly, regardless of what the Cordish Defendants wrote, nothing could have changed the basic legal precept that a plaintiff can obtain judgment only against defendants who are actually liable. Plaintiffs simply could not have believed that they could obtain a judgment against (for instance) Entertainment Concepts Investors merely by proving that Lounge KC was liable. Obtaining a judgment against Entertainment Concepts Investors required proof that Entertainment Concepts Investors

16

did something wrong or was liable for another party's wrongdoing. This concept is so fundamental to how a lawsuit works that the Court will not entertain the notion that Plaintiffs somehow thought they could obtain a judgment against an entire group of defendants represented by the same counsel simply by proving that one among them was liable.

Finally, on several occasions the Court pointed out the lack of any clear indication as to how some of the Defendants were involved in this suit. The Court was called upon to describe the nature of the case numerous times, and pointed out Plaintiffs' lack of explanation as to how some of these Defendants were connected to the case. The Court also had several opportunities to remind Plaintiffs of the need to demonstrate that these Defendants did something that made them liable. For instance:

- On August 26, 2014, the Court issued an Order dismissing Count I for lack of jurisdiction but denying the request to dismiss Count II. In describing the Amended Complaint, the Court wrote: "Not all of the Defendants' roles or connections to the District are pleaded (but this is not the basis for the motions so the Court will not dwell on this issue at length)." Doc. # 56 at 1-2.
- On February 3, 2015, the Court issued an Order denying Plaintiffs' Motion for Class Certification. The Court noted that the Amended Complaint alleged Defendant The Cordish Companies controlled business in the Power and Light District and that Defendant First Response provided security, but "[b]eyond these allegations, the Defendants' roles or connections to the District are not clearly described." Doc. # 121 at 2.
- In that same Order, the Court observed that Plaintiffs appeared to be "putting Defendants on trial in the abstract for their wrongdoing, but this is not the object of litigation." The Court concluded by explaining that "Plaintiffs may put Defendants on trial *for what Defendants did to Plaintiffs.*" Doc. # 121 at 13 (emphasis in original).
- On February 17, 2015, the Court issued an Order denying Plaintiffs' Motion for Leave to File Second Amended Complaint Out of Time. In discussing the Amended Complaint, the Court observed that it "names Entertainement Concepts Investors, LLC, and Entertainment Consulting International, LLC as

17

Case 4:14-cv-00227-ODS   Document 289   Filed 08/28/15   Page 17 of 18

defendants, [but] the Amended Complaint does not explain their connection to the suit. AC, ¶¶ 10-11." Doc. # 144 at 5.

A statement from the Court should not have been necessary to advise Plaintiffs that their claims against Defendant would be analyzed separately – but if one was, the Court advised Plaintiffs they could not lump all the Defendants together as a group and, without more, expect liability to attach. The Court's statements reflect the previously-mentioned basic concept of litigation: to make a defendant liable, a plaintiff must present proof that the defendant in question is liable.

Plaintiffs' assertion that they should have been permitted to file a Sur-Reply because the need for proof demonstrating each Defendant was liable was not apparent to them until after the Cordish Defendants filed their Reply Suggestions is rejected.

### III. CONCLUSION

The Amended Motion to Amend or Alter Judgment and for Relief From Judgment, along with its embedded request for leave to file a Sur-Reply, is denied.

IT IS SO ORDERED.

DATE: August 28, 2015

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT